IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 15-cv-01284-CMA-CBS

WANDA BELIZ,

        Plaintiff,

v.

LOAN SIMPLE, INC., *a/k/a* ASCENT HOME LOANS,
THE CASTLE LAW GROUP, LLC,
CITIMORTGAGE, INC.,
FEDERAL HOME LOAN MORTGAGE CORPORATION,
MALCOM & CISNEROS, *a Law Corporation*,
RONALD W. SERVIS, *attorney*,
PATRICIA D. SACHEZ, *attorney*,

        Defendants.

---

RECOMMENDATION REGARDING DEFENDANTS' MOTIONS TO DISMISS &
PLAINTIFF'S MOTION TO AMEND

---

Magistrate Judge Shaffer

    This matter comes before the court on Defendant Federal Home Loan Mortgage Corporation's ("Freddie Mac") "Motion to Dismiss the Verified Complaint Pursuant to Rules 12(b)(1) and 12(b)(6)" (Doc. 42) filed on September 25, 2015. Also before the court is Plaintiff Wanda Beliz's "Motion for Leave to File First Amended Complaint" (Doc. 71) filed on November 13, 2015. These Motions were referred to the Magistrate Judge by Orders of Reference dated September 28, 2015 (Doc. 43) and November 13, 2015 (Doc. 72), respectively. In addition, Defendants Malcom & Cisneros, Ronald W. Servis, Patricia D. Sachse, CitiMortgage, Inc., Loan Simple, Inc., and Castle Law Group, LLC, have each filed separate Motions to Dismiss (Docs. 11, 17, 33, 76), all of which have been referred to the Magistrate

Judge (Docs. 13, 18, 41, 77), and make largely the same arguments as those asserted by Freddie Mac.[1] The court has considered the motions, responses and replies, the entire case file, and the relevant legal authorities. For the following reasons, the court recommends that this case be dismissed in its entirety.

## BACKGROUND & PROCEDURAL HISTORY

The facts giving rise to this case date back to January 12, 2005, when Plaintiff refinanced her home with Defendant Loan Simple, Inc.[2] ("Loan Simple"). (Doc. 1 at ¶¶ 13). In doing so, Plaintiff borrowed the principle sum of $172,000, and in exchange, signed a Promissory Note ("the Note") in the amount of $172,000 in favor of Loan Simple. (*Id*. at ¶¶ 13-14; *see also Deed of Trust*, Doc. 42-3 at 6[3]). In addition to the Note, Plaintiff also executed a Deed of Trust (Doc. 42-3 at 6) securing the loan with real property located at 1780 Old Stage Road, Colorado Springs, Colorado 80906 ("the Property"). On that same day, Loan Simple assigned the Deed of Trust to Defendant CitiMortgage, Inc. ("Citi"). (*Assignment*, Doc. 1 at 68).

On July 12, 2012, a "Notice of Election and Demand for Sale by Public Trustee" ("Notice & Demand") was recorded in the official property records of El Paso County. (*Notice & Demand*, Doc. 1 at 71). The Notice & Demand stated that Plaintiff had violated the terms of the

---

[1] Each of these motions has been fully briefed with responses and replies.

[2] According to Loan Simple's Brief, it was previously known as Ascent Home Loans. (*See* Doc. 33). Although several of the documents name Ascent Home Loans, the court will, for simplicity, only refer to Loan Simple.

[3] When deciding a motion to dismiss, a court must usually disregard facts supported by documents outside of the pleadings unless the court first converts the motion to dismiss into a motion for summary judgment. *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). The court, however, may consider documents outside of the complaint in three instances. First, the court may consider outside documents — such as affidavits — when ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *See Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987). Second, the court may consider documents subject to judicial notice, such as court documents or matters of public record. *Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006). Third, the court may consider documents that are central to the plaintiff's claims and to which the plaintiff refers in the complaint. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). To the extent that the court relies on any documents outside of the pleadings, the court has evaluated each and concludes that they fall within one of these exceptions.

Deed of Trust by failing to pay principal and interest when it was due, and it asked the Public Trustee to give notice and sell the property to pay off the loan. *Id*. On September 7, 2012, Citi filed a Rule 120 Motion for Order Authorizing Sale. (*See* Doc. 1 at ¶ 32; *Rule 120 Motion*, Doc. 42-1). Plaintiff filed a formal opposition, challenging the foreclosure on the grounds that Citi was not the true owner of the Note and did not have the right to foreclose. (Doc. 1 at ¶ 33; *Opposition*, Doc. 42-3).

Prior to the Rule 120 hearing, Plaintiff filed a Chapter 7 Bankruptcy Petition. (*Bankruptcy Petition*, Doc. 42-4). In neither the statement of her financial affairs nor her asset schedules did Plaintiff identify any legal claims that she had against any of the Defendants. *Id*. at 7-11, 20-24. The bankruptcy court entered a discharge order in February 2013. (*Order of Discharge*, Doc. 42-5). The Rule 120 proceedings remained pending during this time. (*Register of Actions*, Doc. 42-2 at 3).

On June 21, 2013, the El Paso County District Court authorized the sale of Plaintiff's property under Rule 120. (*Order*, Doc. 42-6). After notice and advertisement of the sale, the property was sold to Citi on August 7, 2013. (*Public Trustee's Certificate of Purchase*, Doc. 1 at 73). Following the expiration of the redemption period, a Confirmation Deed was executed in favor of Citi, (*Confirmation Deed*, Doc. 1 at 72), who then transferred the property to Freddie Mac via a Special Warranty Deed. (*Deed*, Doc. 42-15). The El Paso County Court ultimately affirmed the Public Trustee's sale to Citi on November 19, 2013. (*Order*, Doc. 42-7).

On June 17, 2015, Plaintiff filed her Complaint (Doc. 1) against the Defendants[4] asserting fifteen claims including, among others, claims of fraud; violations of the Federal and Colorado Fair Debt Collection Practices Acts; conspiracy; and violations of the Colorado Consumer

---

[4] Plaintiff originally named the Public Trustee, Thomas S. Mowle, as a Defendant. She moved to voluntarily dismiss Mr. Mowle on September 10, 2015, (Doc. 35), which was self-executing upon its filing. (Doc. 49).

Protection Act. *See Id.* at ¶¶ 68-210. Although they have filed separate motions to dismiss to address Plaintiff's respective claims against them, each Defendant maintains that Plaintiff lacks standing to pursue her action because she failed to disclose any of her claims in her bankruptcy petition. (*See* Doc. 11 at 7-8; Doc. 17 at 7-10; Doc. 33 at 10-16; Doc. 42 at 10-13; Doc. 76 at 4 (Castle Law Group joining the position of the other Defendants)).

Following a Status Conference, wherein this court advised Plaintiff regarding federal question jurisdiction, (Doc. 47 at 10-12), Plaintiff moved to amend her complaint to add an additional claim arising under federal law. (Doc. 71). Citi, Freddie Mac, and Loan Simple oppose Plaintiff's attempt to amend on the basis that any amendment would be futile. (Doc. 73, 74, 75).

## STANDARDS OF REVIEW

**A.     Fed. R. Civ. P. 12(b)(1)**

Federal courts, as courts of limited jurisdiction, must have a statutory basis for their jurisdiction. *See Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)). Pursuant to Federal Rule of Civil Procedure 12(b)(1), the court may dismiss a complaint for lack of subject matter jurisdiction. The determination of a court's jurisdiction over subject matter is a question of law. *Madsen v. United States ex rel. U.S. Army, Corps of Eng'rs*, 841 F.2d 1011, 1012 (10th Cir. 1987). "A court lacking jurisdiction cannot render judgment but must dismiss the cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974).

A motion to dismiss for a lack of subject matter jurisdiction may take two forms. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). It may facially attack a complaint's

allegations or it may challenge the facts upon which subject matter jurisdiction depends. *Id*. at 1002-1003.

> When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id*. at 1003 (internal citations omitted); *see also Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994))

**B.     Fed. R. Civ. P. 12(b)(6)**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). The court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, this court may consider exhibits attached to the Complaint without converting the motion into one for summary judgment pursuant to Rule 56. *See Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991).

5

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (internal quotation marks omitted). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard requires more than the sheer possibility that a defendant has acted unlawfully. *Id*. Facts that are "merely consistent" with a defendant's liability are insufficient. *Id*. "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's actions harmed him or her; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

The court is cognizant of the fact that Plaintiff is not an attorney; consequently, her pleadings and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by a lawyer. *See Hall*, 935 F.2d at 1110 (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (19972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, [her] confusion of legal theories, [her] poor syntax and sentence construction, or [her] unfamiliarity with pleading requirements." *Id*. However, this court cannot act as a *pro se* litigant's advocate. *Id*. It is the responsibility of the *pro se* plaintiff to provide a simple and concise statement of her claims and the specific conduct that gives rise to each asserted claim. *See Willis v. MCI Telecomms.*, 3 F. Supp. 2d 673, 675 (E.D.N.C. 1998). This court may not

"supply additional factual allegations to round out a plaintiff's complaint." *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Nor may a plaintiff defeat a motion to dismiss by alluding to facts that have not been alleged, or by suggesting violations that have not been plead. *Associated General Contractors of California Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). *Pro se* plaintiffs must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## ANALYSIS

**I.    Plaintiff's Complaint should be dismissed in its entirety.**

This court has original jurisdiction over this case because Plaintiff has alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, ("FDCPA"), (Doc. 1 at ¶¶ 91-113), which is a federal statute. *See* 28 U.S.C. § 1331 (federal question jurisdiction). If the court retains jurisdiction over the FDCPA claim (claim four), it also has jurisdiction over Plaintiff's remaining claims, which arise under state law. *See* 28 U.S.C. § 1367 (supplemental jurisdiction). Therefore, before the court addresses Defendants' myriad arguments, it must necessarily first answer a pivotal question: Does Plaintiff's FDCPA claim survive the Motions to Dismiss? For two primary reasons — lack of standing and lapse of the statute of limitations — the answer is no. Consequently, the court should decline supplemental jurisdiction over Plaintiff's state law claims.

### A.    Standing

"The Supreme Court's standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing[,] which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Brumfiel v. U.S. Bank*, 618 F. App'x 933, 936 (10th Cir. 2015) (quoting *Wildnerness Soc'y v. Kane Cty.*,

7

632 F.3d 1162, 1168 (10th Cir. 2011) (en banc)) (internal quotation marks omitted). Numbered among these prudential requirements is the general limitation that a litigant may not raise another person's legal rights. *See id.* Indeed, under Fed. R. Civ. P. 17(a)(1), "[a]n action must be prosecuted in the name of the real party in interest." *See also RMA Ventures Cal. v. SunAmerica Life Ins. Co.*, 576 F.3d 1070, 1073 (10th Cir. 2009) (citing *Rawoof v. Texor Petrol. Co.*, 521 F.3d 750, 757 (7th Cir. 2008), for the principle that Rule 17(a)(1) is essentially a codification of the prudential standing limitation precluding litigants from enforcing the rights of others). Here, once Plaintiff filed her bankruptcy petition, she was no longer the real party in interest with respect to her FDCPA claim.[5]

When a debtor files a bankruptcy petition, it transforms his or her "legal or equitable interests" into property of the bankruptcy estate, at which point the bankruptcy trustee becomes the real party in interest and has "the sole capacity to sue and be sued over assets of the estate." *Mauerhan v. Wagner Corp.*, 649 F.3d 1180, 1184 n.3 (10th Cir. 2011) (citing 11 U.S.C. § 323(b)); *see also Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1159 (10th Cir. 2007) ("The bankruptcy code imposes a duty upon a debtor to disclose all assets, including contingent and unliquidated claims . . . . That duty encompasses disclosure of all legal claims and causes of action, pending or potential, which a debtor might have."). Thus, upon filing her bankruptcy petition, Plaintiff was required to list the assets of her estate, which included any claims or causes of action — pending or potential — against these Defendants. 11 U.S.C. § 521(1)(B); *Eastman*, 493 F.3d at 1159.

In her response, Plaintiff contends that her claims do not belong to the bankruptcy estate because she was not aware of any "issues prior to foreclosure, which was after the bankruptcy."

---

[5] This is, in all likelihood, the case with Plaintiff's other claims because they too are solidly based on conduct that allegedly occurred pre-bankruptcy. However, given the court's resolution of the issue on this claim, it need not delve into that analysis.

(Doc. 68 at 12). Construing this argument liberally, as it must, Plaintiff seems to be asking this court to excuse her failure to disclose these claims due to inadvertence or mistake. The court, however, is not persuaded that this principle is applicable to Plaintiff's FDCPA claim. *See Eastman*, 493 F.3d at 1157 (a debtor's failure to disclose is deemed inadvertent or mistaken "only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment" (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 210 (5th Cir. 1999)).

Contrary to her representations, it is clear that Plaintiff had enough information to apprise her of a possible FDCPA cause of action. In her FDCPA claim, Plaintiff alleges that in July 2012, Castle Law Group sent her the Notice & Demand. (Doc. 1 at ¶¶ 97-98; *Notice*, Doc. 1 at 71). She contends that the Notice & Demand purposely misrepresented the identity of the owner of the Note in violation of the FDCPA. *Id*. at ¶ 94. Before she filed her bankruptcy petition (November 2012), Plaintiff had already asserted this theory in opposition to the Rule 120 foreclosure, which was filed on September 21, 2012. (*See* Doc. 42-3). Consequently, she was required to disclose this claim in her bankruptcy proceeding. *See Eastman*, 493 F.3d at 1159; *see also U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 361-62 (5th Cir. 2014) (holding that debtors must disclose "all pending and potential claims" "as long as the debtor has enough information to suggest that [s]he may have a potential claim" (internal quotation marks omitted)); *In re Coastal Plains*, 179 F.3d at 208 ("if the debtor has enough information . . . prior to confirmation to suggest that [she] may have a possible cause of action, then it is a 'known' cause of action such that it must be disclosed") .

Because she did not include it in her petition, the bankruptcy trustee could neither administer nor abandon the FDCPA claim at the close of the bankruptcy case and, therefore, it

remained a part of the estate. 11 U.S.C. § 554(d). Accordingly, the court concludes that Plaintiff lost the authority to pursue her FDCPA claim and recommends that Defendants' Motions to Dismiss be granted to the extent that they seek dismissal of Plaintiff's FDCPA claim.

### B.     Statute of Limitations

Even if Plaintiff did have standing to pursue her FDCPA claim, the court also concludes that this claim would, nonetheless, be barred by the statute of limitations and be subject to dismissal.

As a preliminary matter, the court addresses the Defendants' arguments that Plaintiff's case is barred by the *Rooker-Feldman* doctrine.[6] The *Rooker-Feldman* doctrine prohibits federal courts from exercising "appellate" jurisdiction over final judgments by a state court. *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006). To wit, it "precludes a losing party in state court who complains of injury caused by the state court judgment from bringing a case seeking review and rejection of that judgment in federal court." *Dillard v. Bank of New York*, 476 F. App'x 690, 691 (10th Cir. 2012) (quoting *Miller v. Deutsche Bank Nat'l Trust Co.*, 666 F.3d 1255, 1261 (10th Cir. 2012)) (internal quotation marks omitted). Indeed, to the extent that Plaintiff seeks to "unwind" the now complete foreclosure proceedings, this court has already recognized that it cannot "review or interfere with the further sale or possession of the property or with the El Paso County Court's foreclosure-related decisions." (Doc. 15 at 4).

However, "*Rooker-Feldman* does not bar claims that would be identical even if there had been no state-court judgment; that is, claims that do not rest on any allegation concerning the state-court proceedings or judgment." *Bolden v. City of Topeka*, 441 F.3d 1129, 1145 (10th Cir. 2006). Here, Plaintiff's FDCPA claim is premised on the *manner* in which the property was

---

[6] The doctrine is so named for two United States Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

foreclosed. As previously discussed, Plaintiff's FDCPA claim is based on Castle Law Group's alleged misrepresentations in the July 2012 Notice & Demand. (Doc. 1 at ¶¶ 97-113; *see also Notice of Election and Demand for Sale*, Doc. 1 at 71).[7] Thus, Plaintiff's claim for monetary damages[8] based on the alleged misrepresentations is not an attack on the judgment or proceedings, but rather, is a claim that could have been brought regardless of what occurred at the state-court level. *See Bolden*, 441 F.3d at 1145.

Nevertheless, the FDCPA claim should be dismissed because it is barred by the one-year statute of limitations. "An action to enforce any liability created by [the FDCPA] must be brought in any appropriate United States district court . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Plaintiff, however, did not initiate this action until June 17, 2015, nearly three years after she received the Notice & Demand from Castle Law Group. (Doc. 1).

In her response (Doc. 68), Plaintiff argues that her claim is not barred because the statute of limitations was tolled. *Id.* at 9. Specifically, Plaintiff contends that the time for action had not accrued "due to disinformation about who was the true Note Holder." *Id.* Even assuming, *arguendo*, that equitable tolling or the federal discovery rule apply to the FDCPA, this argument is not persuasive. *See Johnson v. Riddle*, 305 F.3d 1107, 1113 n.3 (10th Cir. 2002) ("[T]he continuing scope of the traditional federal discovery rule, at least in the [FDCPA], has been rendered uncertain by dicta in *TRW Inc. v. Andrews*, 534 U.S. 19 . . . (2001)."). It is clear that

---

[7] The court recognizes that the FDCPA claim also contains a single allegation related to Freddie Mac's conservatorship and its ability to foreclose. (Doc. 1 at ¶ 95). To the extent that Plaintiff would have this court make a determination regarding the propriety of the foreclosure, that relief is indeed barred by *Rooker-Feldman*.

[8] Injunctive relief is not an available remedy under the FDCPA. *See Weiss v. Regal Collections*, 385 F.3d 337, 341 (3d Cir. 2004) ("The FDCPA contains no express provision for injunctive or declaratory relief in private actions. Most courts have found equitable relief unavailable under the statute, at least with respect to private actions.") (citations and footnote omitted); 15 U.S.C. § 1692k. The court advised Plaintiff that the only available remedy under the FDCPA was damages. (Doc. 47 at 24).

11

Plaintiff discovered this alleged violation in July 2012 when she received the offending Notice & Demand from Castle Law Group. The court's conclusion is again supported by Plaintiff's opposition to the Rule 120 foreclosure, wherein she argued that "the true owner of the note" was unknown. (*See Opposition*, Doc. 42-3). Consequently, because Plaintiff provides, and the court finds, no other legal basis for the tolling, the court concludes that Plaintiff's FDCPA claim is barred by the statute of limitations.

### C.     Supplemental Jurisdiction

Because the court finds that Plaintiff lacks standing to pursue her FDCPA claim and, alternatively, that the FDCPA claim is barred by the statute of limitations, the court also recommends that supplemental jurisdiction be declined. A federal court does not have independent jurisdiction over state law claims unless those state law claims "turn on some substantial questions of federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). The court has thoroughly reviewed Plaintiff's remaining claims, which allege tortious conduct or are specifically brought pursuant to Colorado statutes. (*See* Doc. 1). Consequently, the court finds that none of them turn on substantial questions of federal law.

When a "district court has dismissed all claims over which it had original jurisdiction," the court "may decline to exercise supplemental jurisdiction" over the remaining state law claims. 28 U.S.C. § 1367(c)(3); *see also TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (noting that supplemental jurisdiction over state law claims "is extended at the discretion of the court and is not a plaintiff's right"). "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims."

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache Cty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

Here, Plaintiff's remaining claims are firmly grounded in state law. Accordingly, the court recommends that supplemental jurisdiction over these claims be declined, and that the state law claims be dismissed without prejudice. *See United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002) (holding that "when a district court dismisses the federal claims, leaving only the supplemented states claims, the most common response . . . has been to dismiss the state claim or claims without prejudice.") (internal quotation marks and citations omitted); *Thatcher Enters.*, 902 F.2d at 1478.

## II.     Plaintiff's Motion to Amend should be denied as futile.

Plaintiff has also moved for permission to file an amended complaint. (Doc. 71). Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." However, a court may deny a motion to amend if the amendment would be futile. *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007). A proposed amendment is futile "if the complaint, as amended, would be subject to dismissal." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013). The decision to grant or deny a motion to amend rests within the sound discretion of the district court. *See Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993).

In her proposed amended complaint, Plaintiff asserts fifteen claims, most of which again allege tortious conduct[9] or arise specifically out of Colorado statutes. (*See* Doc. 71-1). In

---

[9] Plaintiff also adds a new claim of "elder abuse", (Doc. 71-1 at ¶¶ 77-89), and contends that this is a federal cause of action. (Doc. 78 at 3-5). The court, however, has not been able to find any law that would give rise to a federal cause of action for "elder abuse," and Plaintiff's arguments and citations on this subject are not well-founded.

addition, she again asserts her claim under the FDCPA, alleging that Castle Law Group misrepresented the owner of the Note in the Notice & Demand. Plaintiff has amended this claim by removing the allegation against Freddie Mac; however, in all other respects it is substantively identical to the original claim. (*Compare* Doc. 1 at ¶¶ 91-113, *with* Doc. 71-1 at ¶¶ 90-107). Thus, as articulated above, Plaintiff's FDCPA claim is still subject to dismissal because (1) Plaintiff lacks standing to assert it; and (2) the claim is barred by the statute of limitations. *See* Secs. I.A and I.B.

In an obvious attempt to remain in federal court, Plaintiff also adds a new claim pursuant to 42 U.S.C. § 1983. (Doc. 71-1 at ¶¶ 47-60). In it, she contends that Defendants Loan Simple, Citi, Castle Law Group, and Freddie Mac violated her Fourth, Fifth, and Fourteenth Amendment rights. Plaintiff's efforts are of no avail; this proposed cause of action is also subject to dismissal for failure to state a colorable claim.

"Under Section 1983, liability attaches only to conduct occurring 'under color of law.'" *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

> The Tenth Circuit has recognized the applicability of four tests for determining whether state action exists. First, the close nexus test asks whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself. Second, the symbiotic relationship test finds state action when the State has so far insinuated itself into a position of interdependence with the private party. Third, under the joint action test, the court will find state action if a private party is a willful participant in joint activity with the State or its Agents. Finally, the public functions test finds

> state action when a private entity exercises powers traditionally exclusively reserved to the State.

*Anglin v. City of Aspen, Colo.*, 552 F. Supp.2d 1229, 1240 (D. Colo. 2008) (citing *Gallagher*, 49 F.3d at 1448 (further internal quotation marks and citations omitted)).

Here, liberally construed in the light most favorable to Plaintiff, the proposed amended complaint contends that Loan Simple, Citi, Castle Law Group, and Freddie Mac are state actors by virtue of the fact that they utilized the Colorado state court system. (*See* Doc. 71-1 at ¶ 52). This argument fails. The Tenth Circuit has held that a private party does not become a state actor simply by seeking relief through state judicial proceedings. *Cf. Scott v. Hern*, 216 F.3d 897, 906-07 (10th Cir. 2000) (private individual does not engage in state action simply by availing itself of state procedure). "It is well established that mere recourse to state or local court procedures does not by itself constitute 'joint activity' with the state sufficient to subject a private party to liability under section 1983." *Hoai v. Vo*, 935 F.2d 308, 313 (D.C. Cir. 1991). It is similarly fruitless to base a § 1983 claim solely on the argument that a private actor misused available state procedures, particularly in the absence of any overt or significant assistance from state officials. *Cobb v. Saturn Land Co.*, 966 F.2d 1334, 1336-37 (10th Cir. 1992). In this case, the proposed cause of action alleges no active involvement by any state official.[10]

Plaintiff also seems to contend that Freddie Mac is a state actor because it is currently under the conservatorship of the Federal Housing Finance Agency ("FHFA"). (Doc. 71-1 at ¶ 5). The court rejects this proposition. A government-sponsored corporation, such as Freddie Mac, is a governmental actor if: (1) it is created by special law; (2) was created to further governmental

---

[10] Plaintiff's bare allegation that "the County and state courts . . . discriminated against her because of her age, her disability, and her status as a pro se litigant" (Doc. 71-1 at ¶ 51) is a legal conclusion couched as an allegation of fact and does not satisfy the federal pleading standards, even under the most liberal construction. Plaintiff's assertions that the parties conspired with the courts (Doc. 71-1 at ¶ 52) is similarly infirm.

15

objectives; and (3) the government has *permanent* authority to appoint a majority of the directors. *See Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374 (1995). With this framework in mind, the court agrees with those courts that have considered and rejected the argument that Freddie Mac and its companion, Fannie Mae[11], are government actors by virtue of the FHFA conservatorship. *See, e.g. Herron v. Fannie Mae,* 857 F.Supp.2d 87, 92 (D. D.C. 2012) ("[T]he imposition of conservatorship . . . did not transform Fannie Mae into a government actor."); *Syriani v. Freddie Mac Multiclass Certificates, Series 3365,* No. CV 12-3035-JFW, 2012 WL 6200251, *4 (C.D. Cal. 2012) (citing to *Herron* in support of the proposition that a post-conservatorship Freddie Mac "does not become a governmental actor for Fifth Amendment purposes merely because it is placed into conservatorship"); *Dias v. Federal Nat. Mortg. Ass'n*, 990 F. Supp. 2d 1042 (D. Haw. 2013) (concluding that the conservatorship was temporary and, therefore, did not make Fannie Mae a government actor); *Bernard v. Federal Nat. Mortg. Ass'n,* No. 12-14680, 2013 WL 1282016, *3 (E.D. Mich. 2013) ("Fannie Mae, and similar entity Freddie Mac, are not governmental actors post-conservatorship.").

Under the Housing and Economic Recovery Act, Pub.L. No. 110-289, 122 Stat. 2654 (codified at 12 U.S.C. § 4511), Congress empowered the FHFA to become conservator for Freddie Mac for the limited purpose of "reorganizing, rehabilitating, or winding up [its] affairs." 12 U.S.C. § 4617(a)(2). "This is an inherently temporary purpose." *Federal Home Loan Mortg. Corp. v. Gaines*, 589 F. App'x 314, 317 (6th Cir. 2014). Thus, consistent with the foregoing decisions, the court concludes that the FHFA conservatorship does not create the type of permanent control required under *Lebron*.

Because Plaintiff has failed to allege any action on the part of a state actor, her constitutional claim cannot survive a motion to dismiss. Further, because the remaining claims

---

[11] "Fannie Mae" is the commonly known name for the Federal National Mortgage Association.

arise under state law, the court would again recommend that supplemental jurisdiction be declined and that the state law claims be dismissed without prejudice. Therefore, Plaintiff's proposed amendments are futile and her Motion to Amend should be denied.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the court RECOMMENDS that — to the extent that they seek dismissal of Plaintiff's FDCPA claim — Defendants' Motions to Dismiss (Docs. 11, 17, 33, 42, 76) be GRANTED and that claim be dismissed with prejudice. The court FURTHER RECOMMENDS that this court decline supplemental jurisdiction over Plaintiff's remaining claims and dismiss them without prejudice. The court FURTHER RECOMMENDS that Plaintiff's Motion to Amend (Doc. 71) be DENIED as futile.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. Once Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar de novo review by the district court of the magistrate judge's proposed findings and recommendations and will result in waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the

magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation de novo despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve the issue for *de novo* review by the district court or appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 14th day of January, 2016.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge